1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  1900 Camden Avenue, Suite 101
   San Jose, California 95124
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: service@moorelawfirm.com

5  Attorney for Plaintiff
   Francisca Moralez

6

7

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10

11 FRANCISCA MORALEZ,                    ) No.
                                         )
12        Plaintiff,                     ) **COMPLAINT FOR:**
                                         )
13     vs.                               )
                                         ) 1) **Denial of Access under Title III of**
14 AFON CA LLC; AULAKH & CHAHAL          )    **the Americans with Disabilities Act**
   INC. dba ANIMAL MEDICAL CENTER        )    **of 1990 (ADA)**
15 OF SAN RAFAEL;                        )
                                         ) 2) **Denial of Access under the**
16        Defendants.                    )    **California Unruh Civil Rights Act**
                                         )
17                                       ) 3) **Retaliation under the ADA and**
                                         )    **California Unruh Civil Rights Act**
18                                       )
                                         ) 4) **Breach of Contract**
19                                       )
                                         ) 5) **Specific Performance**
20                                       )
                                         ) 6) **Denial of Full and Equal Access to**
21                                       )    **Public Facilities**
                                         )
22                                       )
                                         )
23 _____)

24

25

26

27

28

Plaintiff FRANCISCA MORALEZ ("Plaintiff") alleges as follows:

## I.    PARTIES

1.    Plaintiff has physical disabilities, as defined by both state and federal law. Specifically, Plaintiff suffers from rheumatoid arthritis and is substantially limited in her ability to walk, requiring her to use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

2.    Defendants AFON CA LLC and AULAKH & CHAHAL INC. dba ANIMAL MEDICAL CENTER OF SAN RAFAEL (collectively "Defendants") consist of a person (or persons), firm, and/or corporation, and own, operate, and/or lease the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Animal Medical Center
> 4140 Redwood Highway
> San Rafael, CA 94903
> (hereafter "the Facility")

## II.    JURISDICTION

3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.    Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.    VENUE

6.    All actions complained of herein take place within the jurisdiction of the United States District Court, Northern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

//

//

# IV.   FACTS

7.     On or about March 30, 2023, Plaintiff brought a legal action against Defendants in the United States District Court, Northern District of California, case number 3:23-cv-01512-JCS ("the Original Action"), seeking an injunction giving her full and equal access to the Facility as required by the federal Americans with Disabilities Act and parallel California law, and for damages resulting from her inability to fully access the Facility.

8.     The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

9.     On or about December 21, 2023, Plaintiff and Defendants entered into a Settlement Agreement and Release in Full ("the Settlement Agreement") which provided that Defendants would compensate Plaintiff for her damages, attorney's fees, and costs, and make the following modifications to the Facility such that each item would comply with the new construction standards set forth in the 2010 Americans with Disabilities Act Standards for Accessible Design and California Code of Regulations, Title 24, Part 2, Chapter 11B (the 2019 California Building Code) by December 21, 2024:

    i.     Provide a properly configured and identified accessible route of travel from the public sidewalk to the Facility entrance which does not require travel through the vehicular way or behind parked vehicles.

    ii.     Provide proper tow-away signage.

    iii.     Eliminate excessive changes in level at the ramp serving the designated accessible parking.

    iv.     Provide one van-accessible disabled parking stall with adjacent access aisle. The accessible parking and access aisle shall be free of excessive slopes and changes in level, and shall have proper pavement markings and signage. Remove the wheel stop from the access aisle.

    v.     Implement a policy, including posting appropriate signage, whereby the side/rear parking lot will be closed to all customers and members of the

public. Defendants shall properly enforce this policy, including tow-away of unauthorized vehicles. Based on Defendants' material representation that they will be implementing such policy, only one van-accessible parking stall shall be required in the primary parking lot as provided by section [iv] above. If Defendants fail to effectively implement and enforce this policy, they shall be required to provide a second accessible parking stall.

vi.    Provide a properly configured accessible route of travel from the designated accessible parking to the Facility entrance, free of excessive slopes in the direction of travel and cross slopes.

vii.    Provide a properly configured and identified accessible Facility entrance, including level and unobstructed exterior maneuvering clearances at the accessible leaf. Properly adjust and maintain the door pressure and closing speed of the designated accessible leaf. Remove the floor mat from the interior maneuvering clearances at the accessible leaf and/or replace it with a mat which does not create changes in level. Alternatively, provide a power-assisted door opener.

viii.    Provide and maintain proper clear floor space for a wheelchair in the waiting room seating area, which shall be located outside of the required clear width of the routes of travel.

ix.    Provide a properly configured accessible portion of the sales/service/reception counter.

x.    Provide and maintain proper clear floor space adjacent to the waiting room water dispenser.

xi.    Provide each type of informational handout within accessible reach ranges.

xii.    Provide at least one accessible exam room, including but not limited to: proper clear width of the doorway opening, proper level and

uninterrupted maneuvering clearances at both sides of the door, properly adjusted and maintained door operating pressure and closing speed, and proper clear floor space for a wheelchair located outside of the door swing and routes of travel.

xiii.    Provide proper level and unobstructed maneuvering clearances at the interior side of the restroom entrance.

xiv.    Provide proper clear width of the restroom entrance doorway.

xv.    Eliminate excessive floor slopes in the restroom within all required clear floor space and maneuvering clearances.

xvi.    Provide a properly configured accessible lavatory in the restroom with sufficient knee and toe clearances, properly positioned with respect to the side wall, with properly insulated plumbing and accessible faucet hardware.

xvii.    Provide a properly configured accessible toilet with flush control on the open side.

xviii.    Provide properly configured and positioned grab bars at the toilet.

xix.    Properly position the toilet paper dispenser, paper towel dispenser, and mirror in the restroom.

10.    A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A.

11.    Plaintiff visited the Facility on December 21, 2024, to pick up a copy of her dog's immunization record and to determine if the barriers to her access had been removed. During such visit to the Facility, Plaintiff discovered that none of the barriers to her access which were to have been remediated by that time pursuant to the Settlement Agreement had been remediated, which interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility during her visit.

//

12.     From January 10-13, 2025, Plaintiff called the Facility dozens of times to try to schedule an appointment for her dog to receive needed immunizations. Each call was answered only by a "busy" message and Plaintiff was unable to get through to staff. Eventually, Plaintiff called from a different telephone number and was able to reach an employee, who kept her on hold for some time while he went to check with the veterinarian. Plaintiff repeatedly asked to schedule an appointment for her dog, but was given multiple excuses why the appointment could not be scheduled, including that the scheduling computer program was not working. At the end of the call, the employee promised to call Plaintiff back to schedule an appointment, but he never did.

13.     On or about January 16, 2025, Plaintiff visited the Facility in person to schedule an appointment for her dog, since she had not had any success calling. Plaintiff spoke first with an employee who, when Plaintiff asked to schedule an appointment, stated she had to speak with the veterinarian, and went into the back for several minutes. When the employee came back, Plaintiff asked to talk to the office manager, who eventually informed Plaintiff that the veterinarian would no longer continue to treat Plaintiff's dog.

14.     Prior to filing the Original Action, Plaintiff had always received calls back from Animal Medical Center staff when promised, and staff never had to seek approval from the veterinarian before she was allowed to schedule an appointment. After filing the Original Action, the treatment she received from Animal Medical Center staff changed dramatically for the worse.

15.     Plaintiff believes that Animal Medical Center's refusal to schedule her an appointment and refusal to continue to treat her dog is in retaliation for her previous lawsuit against the company and her efforts to enforce her civil rights.

16.     The barriers identified herein are only those that Plaintiff currently has knowledge of. Plaintiff has not had the opportunity to conduct a full reinspection of the Facility and accordingly is presently unaware of other barriers which may in fact exist at the Facility and relate to her disabilities. Plaintiff may seek to amend this Complaint if such additional barriers are identified as it is Plaintiff's intention to have all barriers which still exist at the

COMPLAINT

Facility and relate to her disabilities removed to afford her full and equal access.

17.     Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff requires the goods and services offered at the Facility due to her disabilities, and the Facility is relatively local and convenient to Plaintiff. She desires to return to the Facility once the barriers are removed.

18.     Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

19.     At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 1991 ADA Accessibility Guidelines and/or the 2010 ADA Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

20.     Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the

Facility are not isolated or temporary interruptions in access due to maintenance or repairs.

## V.    FIRST CLAIM

### Denial of Access under Title III of the Americans with Disabilities Act of 1990

### (Against All Defendants)

Denial of "Full and Equal" Enjoyment and Use

21.    Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

22.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

23.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

24.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

25.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

26.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendant violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

27.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

1

## Failure to Design and Construct an Accessible Facility

2      28.    Plaintiff alleges on information and belief that the Facility was designed and

3   constructed (or both) after January 26, 1993 – independently triggering access requirements

4   under Title III of the ADA.

5      29.    The ADA also prohibits designing and constructing facilities for first occupancy

6   after January 26, 1993, that aren't readily accessible to, and usable by, individuals with

7   disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

8      30.    Here, Defendants violated the ADA by designing and constructing (or both) the

9   Facility in a manner that was not readily accessible to the physically disabled public –

10  including Plaintiff – when it was structurally practical to do so.[1]

11

## Failure to Make an Altered Facility Accessible

12     31.    Plaintiff alleges on information and belief that the Facility was modified after

13  January 26, 1993, independently triggering access requirements under the ADA.

14     32.    The ADA also requires that facilities altered in a manner that affects (or could

15  affect) its usability must be made readily accessible to individuals with disabilities to the

16  maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

17  primary function also requires making the paths of travel, bathrooms, telephones, and drinking

18  fountains serving that area accessible to the maximum extent feasible. Id.

19     33.    Here, Defendants altered the Facility in a manner that violated the ADA and

20  was not readily accessible to the physically disabled public – including Plaintiff – to the

21  maximum extent feasible.

22

## Failure to Modify Existing Policies and Procedures

23     34.    The ADA also requires reasonable modifications in policies, practices, or

24  procedures, when necessary to afford such goods, services, facilities, or accommodations to

25  individuals with disabilities, unless the entity can demonstrate that making such modifications

26  would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

COMPLAINT

35.    Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

<u>Failure to Maintain Accessible Features</u>

36.    Defendants additionally violated the ADA by failing to maintain in operable working condition those features of the Facility that are required to be readily accessible to and usable by persons with disabilities.

37.    Such failure by Defendants to maintain the Facility in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

38.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

## VI.    SECOND CLAIM

### Denial of Access under the California Unruh Civil Rights Act

### (Against All Defendants)

39.    Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

40.    California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

41.    California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

42.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

//

43.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

44.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

45.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of $4,000 for each offense.

46.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VII.    THIRD CLAIM

### Retaliation

### (Against Defendant AULAKH & CHAHAL INC. dba ANIMAL MEDICAL CENTER OF SAN RAFAEL ("AMC"))

47.     Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

48.     Defendant AMC's actions in denying service to Plaintiff were expressly in retaliation against Plaintiff as a result of Plaintiff's efforts to enjoy her rights under the ADA, and discriminated against Plaintiff for having sought to enforce those rights.

49.     The ADA provides that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).

50.     The ADA's implementing regulations further expressly prohibit "[r]etaliating against any person because that person has participated in any investigation or action to enforce the Act or this part." (28 C.F.R. §36.206(c)(4).)

//

51.    The Unruh Act also prohibits interfering with, or attempting to interfere with, the exercise of enjoyment of the rights secured under the Act by any individual seeking to enforce, exercise or enjoy such rights. Cal. Civ. Code § 52.1(b).

52.    Defendant AMC has retaliated against Plaintiff for her previous lawsuit enforcing her rights under the ADA by refusing her service.

53.    As a proximate result of Defendant AMC's conduct, Plaintiff has suffered embarrassment, anxiety, emotional distress, and inconvenience.

54.    As a result of Defendant AMC's conduct, Plaintiff is, and continues to be, deterred from returning to the Facility because it has been made clear to her that she is not welcomed. Plaintiff wishes to return to the Facility because they have been treating her dog for years. Therefore, Plaintiff has no adequate remedy at law and seeks an injunction prohibiting Defendant AMC from refusing or unreasonably delaying serving her on account of her seeking to enforce her civil rights. Absent an injunction, Defendant AMC will continue to retaliate against Plaintiff and to deny her service.

55.    Therefore, Plaintiff has no adequate remedy at law and seeks an injunction prohibiting Defendant AMC from further retaliating against her.

56.    Plaintiff seeks all relief available under the ADA and Unruh Act (i.e., injunctive relief, attorney fees, costs, and litigation expenses) for these aforementioned violations.  42 U.S.C. § 12205.

## VIII. FOURTH CLAIM

### Breach of Contract

### (Against All Defendants)

57.    Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

58.    On or about December 21, 2023, Plaintiff and Defendants entered into the Settlement Agreement, which provided, in part, that Defendants would remove certain barriers to access from the Facility by December 21, 2024.

59.    On or about December 21, 2024, Defendants breached the Settlement Agreement by failing to perform the required barrier removal.

60.    Plaintiff has performed all of her obligations to Defendants under the Settlement Agreement, including but not limited to dismissal of her previous lawsuit against Defendants.

61.    Plaintiff brings this action to enforce the Settlement Agreement; specifically, she seeks an order requiring Defendants to remove barriers to her access at the Facility pursuant to the Agreement.

62.    The Settlement Agreement additionally provides that the prevailing party is entitled to reasonable costs, attorney's fees, and expenses reasonably incurred in any action brought to enforce the Settlement Agreement. As such, Plaintiff seeks recovery of her attorney's fees, costs, and litigation expenses incurred in bringing this action.

63.    As a proximate result of Defendants' breach of the Settlement Agreement, Plaintiff has suffered damages according to proof but in no case less than $4,000 statutory minimum damages under the Unruh Act.

## IX. FIFTH CLAIM

### Specific Performance

### (Against All Defendants)

64.    Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

65.    As a result of Defendants' breach of the Settlement Agreement, Plaintiff is, and continues to be, deterred from returning to the Facility because she is aware that barriers to her access remain. Plaintiff wishes to return to the Facility because her dog has been treated there for years. Therefore, Plaintiff has no adequate remedy at law and seeks an injunction requiring Defendants to remove the barriers to her access as required by the Settlement Agreement.

//

//

//

COMPLAINT

## X. SIXTH CLAIM

### Denial of Full and Equal Access to Public Facilities

### (Against All Defendants)

66.    Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

67.    Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

68.    Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

69.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

70.    Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.


## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.    Specific performance of Defendant's obligations for barrier removal pursuant to the parties' written Settlement Agreement of December 21, 2023.

3.    Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

4.    Attorneys' fees, litigation expenses, and costs of suit.[2]

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

5.    Interest at the legal rate from the date of the filing of this action.

6.    For such other and further relief as the Court deems proper.

Dated: August 12, 2025                    MOORE LAW FIRM, P.C.


                                          _/s/ Tanya E. Moore____
                                          Tanya E. Moore
                                          Attorney for Plaintiff
                                          Francisca Moralez

## VERIFICATION

I, FRANCISCA MORALEZ, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: __8/12/2025__                          _____/s/ Francisca Moralez_____
                                                          Francisca Moralez

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that her concurrence in the filing of this document and attribution of her signature was obtained.

                                                          _____/s/ Tanya E. Moore_____
                                                          Tanya E. Moore, Attorney for
                                                          Plaintiff, Francisca Moralez

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE IN FULL

This Settlement Agreement and Release in Full ("Agreement") is between Francisca Moralez (hereinafter referred to as "Plaintiff") on the one hand; and AFON CA LLC and Aulakh & Chahal Inc. (hereinafter collectively referred to as "Defendants") on the other hand. Plaintiff and Defendants are collectively referred to as the "Parties."

## SECTION 1 – RECITALS

1.1    Plaintiff has filed a lawsuit, captioned *Francisca Moralez v. AFON CA LLC, et al.,* Case No. 3:23-cv-01512-JCS, in the United States District Court for the Northern District of California (the "Action"), alleging that certain aspects of the facility known as Animal Medical Center, located at 4140 Redwood Highway in San Rafael, California ("the Facility"), violate the accessibility requirements of Title III of the Americans with Disabilities Act ("ADA"), and applicable California state laws and regulations.

1.2    After considering the substantial expense and uncertainty associated with the Action, the Parties desire to settle all claims and disputes Plaintiff may have with the "Released Parties"[1] relating to the operation of the Facility for valuable consideration. That desire manifests itself by concluding all pending litigation between the Parties relating to the Facility without admitting liability.

---

[1] The "Released Parties" shall collectively include Defendants, and any other entity (present, future, or former), known or unknown, whom Plaintiff might claim to be liable for the Facility. Examples of these entities include licensees, lessors, franchisees, franchisors, employees, attorneys, agents, officers, directors, successors, predecessors, subsidiaries, divisions, affiliates, individuals, firms, insurance companies, reinsurance companies and third-party administrators.

1.3     Therefore, without admitting liability, the Parties agree to resolve all of Plaintiff's claims and disputes against the Released Parties relating to the Facility in consideration for the following terms set forth in this Agreement.

## SECTION 2 – SETTLEMENT AND PAYMENT.

2.1     Payment by Defendants to Plaintiff. Defendants shall pay to Plaintiff the total sum of $40,000.00 ("the Settlement Payment") via wire transfer by January 2, 2024, using the following wire instructions:

> Bank Name: Chase
>
> Payee: Moore Law Firm, P.C. Trust Account
>
> ABA/routing #: 322271627
>
> Account number: 528037230

If any payment required hereunder is not received within five days of the date it is due, Defendants shall be required to pay an additional $50.00 as and for a late fee.

2.2     Facility Renovations. Defendants hereby agree to make each and every modification and accommodation to the Facility as set forth below such that each item complies with the new construction standards set forth in the 2010 Americans with Disabilities Act Standards for Accessible Design and California Code of Regulations, Title 24, Part 2, Chapter 11B (the 2019 California Building Code). All changes required by this section are to be completed within twelve (12) months of the Effective Date of this Agreement.

2.2.1   Provide a properly configured and identified accessible route of travel from the public sidewalk to the Facility entrance which does

not require travel through the vehicular way or behind parked vehicles.

2.2.2  Provide proper tow-away signage.

2.2.3  Eliminate excessive changes in level at the ramp serving the designated accessible parking.

2.2.4  Provide one van-accessible disabled parking stall with adjacent access aisle. The accessible parking and access aisle shall be free of excessive slopes and changes in level, and shall have proper pavement markings and signage. Remove the wheel stop from the access aisle.

2.2.5  Implement a policy, including posting appropriate signage, whereby the side/rear parking lot will be closed to all customers and members of the public. Defendants shall properly enforce this policy, including tow-away of unauthorized vehicles. Based on Defendants' material representation that they will be implementing such policy, only one van-accessible parking stall shall be required in the primary parking lot as provided by section 2.2.4 above. If Defendants fail to effectively implement and enforce this policy, they shall be required to provide a second accessible parking stall.

2.2.6  Provide a properly configured accessible route of travel from the designated accessible parking to the Facility entrance, free of excessive slopes in the direction of travel and cross slopes.

2.2.7  Provide a properly configured and identified accessible Facility entrance, including level and unobstructed exterior maneuvering

clearances at the accessible leaf. Properly adjust and maintain the door pressure and closing speed of the designated accessible leaf. Remove the floor mat from the interior maneuvering clearances at the accessible leaf and/or replace it with a mat which does not create changes in level. Alternatively, provide a power-assisted door opener.

2.2.8  Provide and maintain proper clear floor space for a wheelchair in the waiting room seating area, which shall be located outside of the required clear width of the routes of travel.

2.2.9  Provide a properly configured accessible portion of the sales/service/reception counter.

2.2.10 Provide and maintain proper clear floor space adjacent to the waiting room water dispenser.

2.2.11 Provide each type of informational handout within accessible reach ranges.

2.2.12 Provide at least one accessible exam room, including but not limited to: proper clear width of the doorway opening, proper level and uninterrupted maneuvering clearances at both sides of the door, properly adjusted and maintained door operating pressure and closing speed, and proper clear floor space for a wheelchair located outside of the door swing and routes of travel.

2.2.13 Provide proper level and unobstructed maneuvering clearances at the interior side of the restroom entrance.

2.2.14 Provide proper clear width of the restroom entrance doorway.

2.2.15 Eliminate excessive floor slopes in the restroom within all required clear floor space and maneuvering clearances.

2.2.16 Provide a properly configured accessible lavatory in the restroom with sufficient knee and toe clearances, properly positioned with respect to the side wall, with properly insulated plumbing and accessible faucet hardware.

2.2.17 Provide a properly configured accessible toilet with flush control on the open side.

2.2.18 Provide properly configured and positioned grab bars at the toilet.

2.2.19 Properly position the toilet paper dispenser, paper towel dispenser, and mirror in the restroom.

## SECTION 3 – PLAINTIFF'S RELEASE AS TO DEFENDANTS AND OTHERS

3.1    <u>Release in Full</u>. In consideration for and subject to the Settlement Payment and the terms contained within this Agreement, Plaintiff, and those acting on Plaintiff's behalf (including heirs, beneficiaries, executors, administrators, successors, agents and assigns), shall forever release the Released Parties for all claims, currently known or unknown, foreseeable or unforeseeable, relating to claims of inaccessibility at the Facility – including the claims contained within the Action. This release includes attorneys' fees or costs incurred prior to the Effective Date of this Agreement, and any claims (known and unknown) against the Released Parties for acts and omissions that occurred at the Facility, and any claims regarding the accessibility of the Facility which exist, through the Effective Date of this Agreement.

3.2     <u>Examples of Release</u>. Example of claims released by Section 3.1 include physical or mental injury, pain and suffering, prejudgment interest, compensatory damages, punitive and exemplary damages, insurance and/or reinsurance coverage, benefits, premiums, or medical expenses for treatment Plaintiff may have received, or may receive in the future; this list is not exhaustive. However, excluded from this Agreement are claims that cannot be waived by law.

3.3     <u>Civil Code Section 1542 Waiver</u>. Plaintiff expressly waives the rights provided under California Civil Code Section 1542, which states that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiff understands the significance and consequences of a California Civil Code Section 1542 waiver, and hereby assumes full responsibility for any damages or losses caused by this waiver.

3.4     <u>Covenant Not to Sue</u>. Plaintiff, and those acting on behalf of Plaintiff (including heirs, beneficiaries, executors, administrators, successors, and assignees), agree not to file lawsuits or administrative complaints for any claims related to the Facility, which occurred or could have been brought prior to the execution of this Agreement. Any lawsuit or administrative complaint that violates this section shall constitute a breach of this Agreement, and entitle the Released Parties to all relief available under the law.

3.5    <u>Dismissal of the Action</u>. Within five (5) business days of receiving the Settlement Payment, Plaintiff's counsel shall file the necessary documents to effect a dismissal of the Action with prejudice, or shall prepare and circulate a stipulation for dismissal of the Action with prejudice to any party whose consent to dismissal is required pursuant to Fed. R. Civ. P. 41.

3.6    <u>Full and Knowing Waiver</u>. Each Party consulted with an attorney, or had the opportunity to consult with an attorney, and executed this Agreement with a complete understanding of its legal effect. The Parties understand that executing this Agreement expressly waives all of the aforementioned rights, and binds them to the terms of this Agreement.

3.7    <u>Scope</u>. The terms of this Agreement shall only apply to the Facility as defined herein.

### <u>SECTION 4 - WARRANTIES</u>

4.1    <u>Capacity of the Parties</u>. The Parties warrant that each has the full power, capacity, and authority to enter into this Agreement, and that no claim, right, demand, action, or cause of action, relating to the Facility was assigned to any entity who is not a Party to this Agreement. Further settlement agreements are not necessary to resolve any of the claims (actual or potential) relating to the Facility – including the ones contained within the Action.

4.2    <u>Binding on Parties</u>. The Parties warrant that if the facts, upon which this Agreement is based, are found to be different from the facts now believed to be true, this Agreement will remain binding and effective. The Parties

expressly accept, and assume the risk of, the possibility that differences exist, and agree that this Agreement shall remain binding and effective.

4.3    <u>Other Costs and Attorneys' Fees</u>. Plaintiff warrants that no counsel (other than the Moore Law Firm, P.C.) is entitled to the Settlement Payment, and Plaintiff will indemnify Defendants for their attorneys' fees and costs should any such claim be made.

4.4    <u>Voluntary Action by Parties</u>. The Parties enter into this Agreement knowingly and voluntarily, in order to avoid the expense of continued litigation.

## SECTION 5 – DENIAL OF LIABILITY

5.1    <u>Denial of Liability</u>.    The Released Parties deny all allegations contained in the Action. The Parties expressly represent, understand and assent that this Agreement is a compromise of disputed claims, and shall not be construed as an admission of liability by the Released Parties. Nor shall any acts, omissions, or statements by the Parties be construed as an admission of liability. Nothing contained in this Agreement shall be admissible evidence in any judicial, administrative, or other legal proceeding (other than a proceeding for breaching this Agreement).

## SECTION 6 – GENERAL PROVISIONS

6.1    <u>Entire Agreement</u>. This Agreement constitutes the entire Agreement by the Parties hereto with respect to all of the matters discussed herein, and supersedes all prior or contemporaneous discussions, communications, or Agreements, expressed or implied, written or oral, by or between the Parties.

6.2    <u>Governing Law</u>.    This Agreement shall be interpreted and governed according to the laws of the State of California.

6.3    <u>Binding on Successors</u>. The provisions of the Agreement shall be binding upon, and shall inure to the benefit of the successors, assigns, heirs, executors, and administrators of the respective Parties.

6.4    <u>No Amendment Without Writing</u>. The Parties agree that this Agreement shall not be amended, unless that amendment is made in writing and signed by each Party.

6.5    <u>Waiver</u>.    The waiver of a breach of this Agreement shall not be construed as a waiver of any subsequent breach.

6.6    <u>Severability</u>. The paragraphs and provisions of this Agreement are severable; if any paragraph or provision is found unenforceable, the remaining paragraphs and provisions shall remain in full effect.

6.7    <u>Construction</u>. The Parties acknowledge that they have reviewed and revised this Agreement, and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting Party shall not be employed in the interpretation of this Agreement.

6.8    <u>Effective Date</u>. This Agreement shall become effective and enforceable on the date executed by Plaintiff.

6.9    <u>Attorney Fees for Enforcement of Agreement.</u> The Parties agree that no individual, entity, or Party shall be deemed to be the prevailing party in this Action as this Agreement is a compromise of disputed claims and shall not be construed as an admission or indication of any liability, fault, or noncompliance by the Defendant and/or Released Parties. However, in the

event that future and additional litigation is reasonably required by the Parties, either individually or collectively, to remedy a breach of this Agreement and/or to enforce the Parties' respective rights pursuant to this Agreement, the prevailing party or parties as determined by a court of competent jurisdiction shall be entitled to recover from the non-prevailing party as also determined by a court of competent jurisdiction all reasonable costs, attorneys' fees, and expenses reasonably incurred in such future and additional litigation.

6.10    <u>Counterparts</u>. This Agreement may be executed in counterparts, and authentic facsimile, digital, or scanned signatures shall be deemed to be original signatures for all purposes.

6.11    <u>Confidentiality</u>. This Agreement, and the terms and conditions set forth herein, shall be strictly confidential, and shall not be disclosed voluntarily to any third Party other than the respective officers, directors, members, managers, property managers, and attorneys of any Party hereto. Notwithstanding the foregoing, the terms and conditions of this Agreement may be disclosed: (a) to a court or governmental body having jurisdiction to require and actually requiring such disclosure; (b) as may be required by law, including but not limited to disclosures to the California Commission on Disability Access as required by Cal. Civil Code § 55.32; (c) as a defense to another similar action; (d) to any other party to the Action; (e) to the spouse of any natural party hereto; or (f) in any action or proceeding to enforce this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this

Agreement as of the date specified below.


Dated: _Dec 21, 2023_____

*Francisca Moralez*
<small>Francisca Moralez (Dec 21, 2023 14:33 PST)</small>
_____
Plaintiff, Francisca Moralez


Dated:_____

_____
Defendant, AFON CA LLC

By:    Print Name: _____

       Print Title: _____


Dated:_____

_____
Defendant, Aulakh & Chahal Inc.

By:    Print Name: _____

       Print Title: _____

IN WITNESS WHEREOF, the Parties hereto have executed this

Agreement as of the date specified below.

Dated:_____

_____
Plaintiff, Francisca Moralez

Dated: _12-21-23_

_L. Afana___ (signature)
Defendant, AFON CA LLC

By:    Print Name: _Ludmila AFANASIEV_

Print Title: _PRINCIPAL MANAGER_

Dated:_____

_____
Defendant, Aulakh & Chahal Inc.

By:    Print Name: _____

Print Title: _____

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date specified below.

Dated:_____                    _____
                                           Plaintiff, Francisca Moralez


Dated:_____                    _____
                                           Defendant, AFON CA LLC

                                    By:    Print Name: _____

                                           Print Title: _____


Dated: Dec 21, 2023                        _____
       _____                   Sara Tindall (Dec 21, 2023 12:42 PST)
                                           Defendant, Aulakh & Chahal Inc.

                                    By:    Print Name: _Sara Tindall_____

                                           Print Title: _Practice Manager_____